IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAN J. BENSON , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | |
| ALTERNATIVE CHOICES | ) | 2013-CV-02731-RWS |
| CORPORATION, INC., | ) | |
| JOHN DOE a.k.a. "Mr. Keene", an | ) | |
| employee of Alternative Choices | ) | |
| Corporation, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

This civil rights action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution. Plaintiff contends that the actions of Defendants violate the Establishment Clause of the First Amendment and that Defendants retaliated against Plaintiff after Plaintiff sought to exercise his First Amendment right to participate in the religion of his choice. In support thereof, Plaintiff offers the following:

*Jurisdiction*

1. This Court has personal jurisdiction of Defendants under 28 U.S.C. §

1

   1367 and Article I, § 1, ¶¶ V, XIII of the Georgia Constitution because each Defendant is a resident of Georgia.

2. Venue in the Northern District is proper because all actions complained of occurred within the boundaries of this judicial district and the Defendants reside within this district.

3. This Court has subject matter jurisdiction because this case arises under 42 U.S.C. § 1983 and presents a federal question under 28 U.S.C. § 1331.

*Background*

4. In Georgia, individuals charged with certain crimes may qualify to enter a pretrial diversion program. Pretrial diversion programs are designed "to provide an alternative to prosecuting offenders in the criminal justice system." OCGA § 15-18-80(b).

5. The pretrial diversion program is administered by the prosecuting attorney. "The prosecuting attorney for state courts, probate courts, magistrate courts, municipal courts, and any other court that hears cases involving a violation of the criminal laws of this state or ordinance violations shall also be authorized to create and administer a Pretrial

      Intervention and Diversion Program for offenses within the jurisdiction of such courts[.]" OCGA § 15-18-80(a).

6. Typical pretrial diversion programs require enrollees to pay a fine, attend educational classes, and perform community service.

7. Upon successful completion of the pretrial diversion program, a defendant's criminal charges are dismissed. In most instances, the defendant's charges and arrest record qualify for expungement under OCGA § 35-5-37.

*Parties*

8. Defendant Alternative Choices Corporation, Inc., ("ACC") is a for-profit Georgia corporation that provides pretrial diversion services for individuals prosecuted in the Fulton County Superior Court.

9. Defendant John Doe was an ACC employee at all times relevant to this lawsuit. John Doe's name is currently unknown and is identified herein as "Mr. Keene." Mr. Keene is an African-American male and appears to be approximately forty-years old. This Complaint will be amended to add this Defendant's correct name within the time provided by law.

10. ACC's registered agent is Lynn Miller whose address is 4952 Butner

Road, College Park, Georgia 30349.

11. Plaintiff is an individual previously charged with a two felony offenses and tried in the Fulton County Superior Court. Plaintiff entered ACC's diversion program on August 15, 2011. Plaintiff successfully completed the terms and conditions of the diversion program, and is awaiting his expungement to be processed by the Georgia Bureau of Investigation.

*ACC's Pretrial Diversion Program*

12. At all times relevant to this lawsuit, ACC's diversion program operated on the property and within the main church building of the Fellowship of Faith International Church ("the Church") located at 2553 Connally Drive, East Point, Georgia 30344.

13. ACC establishes the rules for its diversion program, and requires all participants to perform pay certain fines and fees, perform community service, attend educational sessions, and to view educational videos on its website, http://www.pretrialintervention.com.

14. Each component of the ACC diversion program is based on the Christian faith, and ACC explicitly endorses a specific Christian theology.

15. The online videos provided by ACC endorse the Christian religion. The

4

titles of the videos include: "Can I hear from God?", "Do I believe being a christian is a blessing?", "Do I want my life to be hidden with christ in God?", "Do I want the nature of christ in my life?", and "God why is the church backing away from you?" A true and accurate list of the online videos provided on ACC's website is attached as **EXHIBIT A**.

16. Participants are required to view these videos during the diversion program. Failure to view the videos will result in penalties against a participant, including removal from the program and the initiation of formal prosecution. The videos were taped inside the Church. All videos promoted Christianity and provided a specific interpretation of Christianity.

17. The ACC website logs which videos an individual has viewed and the logs created are reviewed by ACC staff to ensure each participants' compliance with the diversion program.

18. The actual cost of the diversion program is not disclosed in writing to any participant. Information on ACC's website states only that "all program costs are reviewed at Orientation." A true and accurate copy of the frequently asked questions page on ACC's website is attached as

**EXHIBIT B**.

19. ACC determines the location where a participant must perform community service and the type of services to be performed.

20. Participants in the diversion program are not allowed to select from a list or otherwise select the non-profit organization at which he or she will perform the community service required by the diversion program.

21. ACC requires, in whole or in part, that participants perform community service at religious institutions.

22. ACC requires that participants perform community service at the Fellowship of Faith Church International.

23. The failure to provide community service at the Church, as dictated by ACC employees, prevents a participant from completing the diversion program.

24. To fulfill the educational requirements of the diversion program, ACC requires participants to attend Bible study groups, prayer groups, and other church-based meetings.

25. The failure to attend the required number of these groups and meetings prevents a participant from completing the diversion program.

26. To complete the diversion program, ACC requires participants to perform religious activities.

27. ACC enforces "penalties" against participants who violate the rules of the diversion program. These penalties come in the form of monetary fines imposed against participants.

28. The failure to pay all amounts ACC claims are due prevents a participant from completing the diversion program.

*Plaintiff's Orientation to ACC's Diversion Program*

29. Prior to orientation, Plaintiff called the ACC office to request a different location for the diversion program that was closer to his Stone Mountain home than East Point location to which he was assigned. An ACC employee stated that the Church in East Point location was the only location where ACC held orientation meetings.

30. On August 15, 2011, Plaintiff attended the diversion program orientation at the Fellowship of Faith Church International ("the Church"). The orientation session took place in the Church's basement. Including Plaintiff, there were approximately nine individuals ("the participants") present for the orientation.

31. The orientation session was conducted by an individual who identified himself as Mr. Keene, and previously identified as Defendant John Doe.

32. Mr. Keene identified himself to the participants as a probation officer, and stated that he had the power to order participants to be incarcerated if they violated any of the diversion program's rules.

33. Mr. Keene stated that if the enrollees "did not do as directed or asked stupid questions," that he would make a phone call and the enrollee would be immediately taken to jail.

34. Mr. Keene also stated, "folks, this is about money. We are going to get as much money from you as possible. If you don't make an appointment it will be $30. If you show up without an appointment it will be $30. If you are late it will be $30. I can send you back to jail with a phone call."

35. When one enrollee asked whether the program could be accomplished in fewer than 17 weeks, Mr. Keene replied, "of course, for an additional $800 you can do it all online except for the community service which you will do here at the church." The church referred to by Mr. Keene was the Fellowship of Faith Church International and the "online" component of the program was a reference to the religious videos

contained on ACC's website.

36. Mr. Keene later handed out papers to the enrollees for the enrollees to sign. One of the papers contained a statement that the enrollees could initial to indicate that they did not want to perform community service at a church or religious institution.

37. Plaintiff and three other enrollees initialed next to the statement indicating they did not wish to perform community service at a religious institution and returned their papers to Mr. Keene.

38. Mr. Keene then looked at the paper and stated, "you didn't mean to sign this line that states that you don't want this program to take place at a church, did you?" Mr. Keene continued and said, "change it right now or I will have police come and take you to jail for a few more weeks."

39. In response to Mr. Keene's threat, Plaintiff and other enrollees changed their responses.

40. In addition to paying the required fines and fees, ACC required Plaintiff to: (a) attend eight group sessions; (b) watch five online videos; (c) visit the Apex Museum in downtown Atlanta; and (d) perform eight hours of community service. See **EXHIBIT C**.

*Plaintiff's Experience Within the ACC Diversion Program*

41. On August 19, Plaintiff completed ACC's participant entrance and assessment questionnaire.

42. On August 20, ACC required that Plaintiff attend a group Bible study, which was led by an individual named Steve Lee. Defendant was given Bible study guides discussing Romans 8, Genesis 1, Colossians 3:1 – 10, and 1 Peter 1:3-9.

43. True and accurate copies of portions of these Bible study guides are attached as **EXHIBIT D**.

44. On August 23, Plaintiff performed eight hours of community service at the Church from 8 a.m. to 4 p.m. Plaintiff and approximately eight other participants were instructed to clean the Church to prepare for a funeral that was scheduled to begin at 12 p.m. that afternoon.

45. Later, at 4:30 p.m., ACC employees required Plaintiff to attend a group Bible study. The Bible study ultimately did not occur because the individual leading the study group did not appear and Plaintiff was allowed to leave.

46. On August 27, ACC required Plaintiff to attend a third group Bible

study.

47. On September 3, Plaintiff viewed an online video of a church service entitled "Can I hear God?" On September 4, Plaintiff viewed the online video "Do I believe being a Christian is a blessing?" On September 5, Plaintiff viewed the online video "Do I want the nature of Christ in my life?" On September 6, Plaintiff viewed the online video "Why don't we hope in Jesus?"

48. Plaintiff was required to view these videos in order to complete the diversion program administered by ACC.

49. On September 6, from 6:30 pm to 9:15 pm, Plaintiff attended a Bible study group at the Church. On September 8, Plaintiff viewed the online video "Why don't we obey the Lord?"

50. On September 10, Plaintiff attended a service at the Church. There were usually eight to ten participants who were required to attend the Church service. Members of the Church handed Bibles, song books, and other religious items to the diversion program participants.

51. On September 13, Plaintiff attended a Bible study with Reverend Wayne Thompson entitled "Spirit of Unbelief" from 6:30 pm to 9:15 pm.

52. On September 16, Plaintiff attended a Bible study at the Church from 10 am to 11:15 am.

53. On September 27, Plaintiff visited the Apex Museum and completed a written exam.

54. Plaintiff completed the diversion program on October 13.

55. Plaintiff was not given any option to choose a non-faith based alternative to any of the above-referenced activities, including where to perform community service, what educational classes to attend, or what educational videos to watch.

56. ACC employees informed participants that if they left the services early, they would not receive credit for attending the required church services.

## COUNT I
*For Damages Resulting from Violations of the Establishment Clause Against Defendant Alternative Choices Corporation, Inc.*

57. Plaintiff incorporates all previous allegations as if set forth fully herein.

58. At all relevant times, ACC contracted with the Fulton County District Attorney's Office to provide pretrial diversion services within the Fulton County Superior Court.

59. In doing so, ACC performed a function that is traditionally the exclusive

province of the State; ACC is therefore a state actor for purposes of section 1983 liability.

60. ACC has a long-standing pattern and practice of requiring participants in its diversion program to participate in religious activities and to perform community service at religious institutions.

61. All acts performed by ACC and its employees in administering the diversion program were conducted under the color of law.

62. ACC has a policy requiring diversion program participants to participate in religious activities as a condition of successful completion of the program.

63. ACC's policy required Plaintiff to participate in religious activities as a condition of remaining in the diversion program.

64. ACC did not offer Plaintiff any alternative to participating in religious activities and threatened Defendant with arrest after Defendant requested such an alternative.

65. ACC coerced and compelled Plaintiff to participate in religious activities by threatening to impose fines, remove him from the diversion program, and place him in jail if he refused or requested to perform non-religious

activities.

*66.* Under ACC's policy, pattern and practice participants like Plaintiff are not provided with any secular alternatives to its diversion program.

*67.* Under ACC's policy, pattern and practice participants like Plaintiff are threatened with arrest if a request is made for a secular alternative.

*68.* ACC's policy, pattern and practice of coercing Plaintiff and other participants of its pretrial diversion program to participate in religion directly caused the violation of Plaintiff's rights secured by the First Amendment of the United States Constitution.

*69.* ACC's act of compelling an individual to engage in religious activities violates the First Amendment of the United States Constitution. The following unconstitutional acts are alleged: (a) ACC required Plaintiff to attend religious services; (b) ACC required Plaintiff to view religious educational videos; (c) ACC required Plaintiff to perform community service at a religious institution; and (d) ACC required that Plaintiff attend religious educational classes.

**COUNT II**
*For Damages Resulting from Violations of the Establishment Clause
Against Defendant John Doe*

*70.*  Plaintiff incorporates all previous allegations as if set forth fully herein.

*71.*  Defendant John Doe, previously identified as Mr. Keene, compelled Plaintiff to participate in ACC's diversion program and to perform religious activities during that program by threatening Plaintiff and other participants with monetary fines, sanctions, removal from the program, and incarceration.

*72.*  Defendant John Doe represented himself as a probation officer, stated he had the authority to send program participants back to jail, and acted under the color of law.

*Prayer for Relief*

Wherefore, Plaintiff respectfully requests that this Court:

(a)  award compensatory, nominal, and punitive damages against Defendant for each and every violation of Plaintiff's constitutional rights in an amount to be proven at trial;

(b)  enjoin Defendant from requiring that diversion program participants attend religious services, watch religious videos, and perform community service at any religious institution without providing an adequate non-faith based alternative;

(c)  award pre-judgment and post-judgment interest;

(d)  award court costs and attorney's fees under 42 U.S.C. § 1988;

(e)  hold a trial by jury on all issues so triable; and

(f)  order such relief as the Court deems just and equitable.

Respectfully submitted, this 15th day of August, 2013.

/s/Jeffrey R. Filipovits
Jeffrey R. Filipovits
Georgia Bar No. 825553
*Attorney for Plaintiff*

FILIPOVITS LAW FIRM, P.C.
2900 Chamblee-Tucker Rd.
Building 1
Atlanta, Georgia 30341
Phone: 770-455-1350
Fax: 770-455-1449
jeff@law.filipovits.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

/s/Jeffrey R. Filipovits
Jeffrey R. Filipovits
